[Cite as *State v. Carrillo*, 2013-Ohio-1608.]

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
PUTNAM COUNTY**

**STATE OF OHIO,**

     **PLAINTIFF-APPELLEE,**          **CASE NO. 12-12-14**

     **v.**

**ADRIAN CARRILLO,**          **O P I N I O N**

     **DEFENDANT-APPELLANT.**

**Appeal from Putnam County Common Pleas Court
Trial Court No. 2012 CR 2**

**Judgment Affirmed**

**Date of Decision: April 22, 2013**

**APPEARANCES:**

     *Nicole M. Winget* **for Appellant**

     *Todd C. Schroeder* **for Appellee**

Case No. 12-12-14

**SHAW, J.**

{¶1} Defendant-appellant, Adrian Carrillo ("Carrillo"), appeals the September 21, 2012 judgment of the Putnam County Court of Common Pleas finding him guilty of gross sexual imposition and attempted importuning, and sentencing him to serve six-and-a-half years in prison, after he entered a plea of no contest. On appeal, Carrillo assigns as error the trial court's decision to overrule his motion to suppress.

{¶2} On January 13, 2012, the Putman County Grand Jury returned a two-count indictment charging Carrillo with one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4), a felony of the third degree, and one count of importuning, in violation of R.C. 2907.07(A) and (C)(1), a felony of the second degree.

{¶3} On April 2, 2012, Carrillo filed a motion to suppress, alleging the search warrant executed at his home was based on invalid information. The affidavit supporting the search warrant was executed by Lt. Marvin Schwiebert and stated the following:

> **The facts tending to establish the foregoing grounds for the issuance of a Search Warrant are as follows:**
>
> **1. Lt. Marv Schwiebert has been a Deputy with the Putnam County Sheriff's Office for 22 years and has served as a law enforcement officer for 37 years.**

**2.    On February 26, 2004, Defendant was sentenced in the Common Pleas Court of Putnam County, Case #2003CR68, for the offense of Unlawful Sexual Conduct with a Minor, a felony of the 4th degree, due to sexual conduct with a thirteen year old child, the Defendant was found to be a Sexually Oriented Offender.**

**3.    In the Fall of 2009, Jane Doe (DOB xx-xx-1999), then ten (10) years old, attended a school seminar, which discussed "good touch, bad touch."    Following that seminar Jane Doe approached the presenters and stated that Adrian Carrillo had been touching her breast, buttocks and vaginal area.  Jane Doe was subsequently interviewed by the undersigned where she disclosed the same.**

**4.    Jane Doe further alleged during the Fall of 2009, that Mr. Carrillo caused her to view a photo of his penis, which was on a cell phone in his possession.**

**5.    Mr. Carrillo was interviewed and acknowledged he had contact with and access to Jane Doe, but denied he touched her buttocks, breast, or vagina.**

**6.    Mr. Carrillo was offered a polygraph examination, which he refused.**

**7.    Jane Doe further reported during the Fall of 2009, that Mr. Carrillo told her he couldn't wait until she turned thirteen (13) years old.**

**8.    Jane Doe reports that until recent events, described below, there had been no contact with Mr. Carrillo following that Fall of 2009 investigation for Gross Sexual Imposition.**

**9.    On October 30, 2011 and November 5, 2011, Jane Doe (now twelve (12) years old), received a phone call to her cell phone. Her caller ID indicated that the call was from a "restricted" number.**

**10. Jane Doe reported to school officials that when she answered those calls, she was able to identify the voice of the caller as Mr. Carrillo, but stated Mr. Carrillo would lower his voice and whisper.**

**11. Jane Doe has maintained the same cell phone number from before Fall of 2009 to present.**

**12. A subpoena was issued to Verizon Wireless, which confirmed that those "restricted" calls came from 419-615-[****], a phone registered to Adrian Carrillo.** *The reason for delay from November 5, 2011 until January 5, 2012, is that it took Verizon Wireless until now to confirm that the calls were coming from Adrian Carrillo's cell phone.[1]*

**13. Jane Doe reports that during those phone calls Mr. Carrillo made a series of statements to her soliciting sexual activity, in that the statements had the purpose of seeking, asking, influencing, inviting, tempting, and/or leading on sexual activity.**

**14. These statements include, but are not limited to, the following: "I want to have sex with you." "I'm masturbating when you talk, do you want to hear it when I'm masturbating?" I want to stick my dick in your pussy." "I'm hard right now, do you finger yourself?" "Do you want to have phone sex?" "I want to fuck you."**

**15. As a result of these facts, Mr. Carrillo appears to have committed the offenses of Gross Sexual Imposition, in violation of Ohio Revised Code Section 2907.05[] and Importuning, in violation of Ohio Revised Code Section 2907.07[.]**

---

[1] The italicized portion of Item 12 reflects a handwritten sentence added by Lt. Schwiebert at the time the issuing judge reviewed the affidavit. Both Lt. Schwiebert's and the issuing judge's initials appear next to the handwritten statement along with the date of the search warrant's issuance, January 5, 2012.

At the suppression hearing, Lt. Schwiebert testified that, prior to issuing the search warrant, the judge questioned him regarding the delay between the alleged incident in November 2011 and the date the search warrant was presented to the judge for a probable cause determination. Lt. Schwiebert testified that he advised the judge that he was waiting for Verizon to release the phone records. Lt. Schwiebert clarified at the suppression hearing that he requested the phone records around the time the incident was reported on November 5, 2011, but the phone records were not made available to him until January 5, 2012.

**16.  It is believed Mr. Carrillo's cell phone and computer will reveal evidence of these crimes.**

{¶4} On May 7, 2012, the trial court held a suppression hearing.  On the record, the parties agreed that the suppression hearing would be limited in scope to address the specific facts alleged in Items 4, 10, and 12.  Lt. Schwiebert was the only witness to testify.

{¶5} In its May 18, 2012 Judgment Entry, the trial court overruled Carrillo's motion to suppress and stated the following:

**The Court makes the following Findings of Fact pursuant to Rule 12(F) of the Ohio Rules of Criminal Procedure:**

**1.   A search warrant was previously issued on January 5, 2012 in Allen County as follows:  In the Matter of the Search of:  The person of Adrian Carrillo; and/or his address at 678 McDonel Street, Lima, Ohio; and/or any vehicle registered in his name; and/or any cell phone owned by Adrian Carrillo.**

**2.   The warrant contained information in an affidavit as a basis for probable cause.**

**3.   Information in Item 12 stating that a phone was registered to Adrian Carrillo was not correct.**

**4.   The remaining information in the affidavit was accurate or was perceived by the signing officer to be accurate.**

**The Court makes the following conclusions of law:**

**1.   The executed warrant contained probable cause for the issuance of a search warrant without the incorrect statement of the officer from Item 12.**

**2.    The search is also valid pursuant to <u>United States v. Leon</u> (1984), 468 U.S. 897, which provides for a good-faith exception to the exclusionary rule.  The officer in the within case had a good-faith belief that the warrant was valid.**

{¶6} Carrillo subsequently entered a plea of no contest pursuant to a negotiated plea agreement with the prosecution.  Carrillo pleaded no contest to Count One, Gross Sexual Imposition, as originally charged in the indictment.  However, Count Two was amended to Attempted Importuning, in violation of R.C. 2923.02 and R.C. 2907.07, a felony of the fourth degree.

{¶7} On September 21, 2012, the trial court sentenced Carrillo to serve five years on Count One and eighteen months on Count Two, to be served consecutively.  The trial court also classified Carrillo as a Tier II sexual offender.

{¶8} Carrillo now appeals, asserting the following assignment of error.

**THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT WHEN IT OVERRULED THE DEFENDANT'S MOTION TO SUPPRESS.**

{¶9} In his sole assignment of error, Carrillo primarily contends that the search warrant lacked probable cause because Item 12 of the affidavit supporting the search warrant incorrectly stated that the phone number used to contact the minor victim was "registered" to Carrillo.  Carrillo also argues that the good-faith exception to the exclusionary rule should not apply because Lt. Schwiebert acted recklessly when he included this statement in the affidavit.  As a result, Carrillo asserts that the phone records should have been suppressed.

{¶10} In reviewing a trial court's ruling on a motion to suppress, the reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions for the trier of fact. *State v. DePew*, 38 Ohio St.3d 275, 277 (1988); *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. *See State v. Schiebel*, 55 Ohio St.3d 71 (1990). The reviewing court, however, must decide de novo whether, as a matter of law, the facts meet the appropriate legal standard. *Id.*

{¶11} In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the task of the issuing judge or magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus. *See also Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317 (1983).

{¶12} Neither a trial court nor an appellate court should substitute its judgment for that of the issuing judge or magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. *George* at 325. The duty of a

reviewing court is simply to ensure that the issuing judge had a substantial basis for concluding that probable cause existed. *Id.* Trial and appellate courts should accord great deference to the issuing judge's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. *George*, 45 Ohio St.3d at paragraph two of the syllabus.

{¶13} At the outset, we question whether Carrillo even has standing to seek the suppression of the phone records in this case. It is undisputed by the parties that Carrillo was not the primary subscriber on the cell phone contract, but that the phone line used by Carrillo to contact the victim was registered to the brother of Carrillo's girlfriend. Thus, whether Carrillo had a legitimate privacy interest in the phone line is somewhat speculative.

{¶14} Nevertheless, at the suppression hearing, Lt. Schwiebert acknowledged that the statement in Item 12 indicating that the phone number used by Carrillo to contact the victim was "registered" to Carrillo was inaccurate. However, Lt. Schwiebert also testified that at the time he reviewed and signed the affidavit supporting the search warrant, he believed the facts contained in the affidavit to be true. It was after the execution of the search warrant that Lt. Schwiebert discovered the phone line was not "registered" to Carrillo. Notwithstanding this fact, Lt. Schwiebert testified that: Carrillo reported to others that the phone number in question was his personal phone number; when law

enforcement made attempts to contact Carrillo using the phone number, Carrillo was the one who answered the phone; and when law enforcement executed the search warrant Carrillo pulled the cell phone associated with the phone number out of his pocket and handed it to law enforcement. After reviewing the facts and circumstances of this case, we concur with the trial court that the issuing judge had a substantial basis to conclude that probable cause existed despite the inaccurate statement in Item 12 of the affidavit.

{¶15} Moreover, even if this court were to determine that Lt. Schwiebert's affidavit contained an insufficient basis to establish probable cause, the evidence obtained with the search warrant is still admissible pursuant to the good-faith exception to the exclusionary rule. *United States v. Leon*, 468 U.S. 897 (1984); *State v. Wilmoth*, 22 Ohio St.3d 251, 254 (1986). In *Leon*, the Court articulated that absent an "allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon* at 926, 104 S.Ct. 3405. Here, there is nothing in the record demonstrating that Lt. Schwiebert was dishonest or reckless in preparing his affidavit or that he could not have harbored an objectively reasonable belief in the existence of probable cause.

{¶16} Finally, we note that Carrillo makes some general and unsupported assertions regarding the reliability of the statements contained in Items 4 and 10. However, based on Lt. Schwiebert's testimony at the suppression hearing, we find Carrillo's arguments to be meritless.

{¶17} Based on the foregoing, Carrillo's assignment of error is overruled.

{¶18} For all these reasons, the judgment and sentence of the Putnam County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**PRESTON, P.J., concurs.**

**ROGERS, J., concurs in Judgment Only.**

**/jlr**